FILED by _____ MC ___ D.C.

Jun 14, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
# 23-20240-CR-ALTONAGA/DAMIAN
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

**EDUARDO PEREZ DE MORALES and**
**ENRIQUE SAMPEIRO,**

            Defendants.
_____/

## INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.      Medicare was subdivided into multiple program "parts." Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies. Medicare Part B covered physician services and outpatient care, including an individual's access to

durable medical equipment ("DME"), such as orthotic braces (*e.g.*, knee braces, back braces, shoulder braces, ankle braces, and wrist braces) and wheelchairs.

3.     DME companies and other health care providers seeking to participate in Medicare Part B and to bill Medicare for the cost of DME and related benefits, items, and services were required to apply for and receive a "provider number" (or "supplier number"). In these applications, DME companies were required to provide truthful and accurate information, including accurately listing the names of all people who have an ownership or security interest in the provider company.

4.     The provider number allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company provided to beneficiaries.

5.     To receive payment from Medicare, a DME company, using its provider number, submitted a health insurance claim form, known as a CMS-1500. Medicare permitted DME companies to submit a CMS-1500 electronically. The CMS-1500 required DME companies to provide certain important information, including: (a) the Medicare beneficiary's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided to or supplied to the beneficiary.

6.     When a claim was submitted to Medicare, the provider certified that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the laws and regulations governing Medicare. The provider further certified that the services and health care items being billed were medically reasonable and necessary and were in fact provided as billed.

7.      Medicare generally paid a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.  Payments under Medicare Part B were often made directly to the DME company rather than to the beneficiary.

8.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

## The Medicaid Program

9.      The Florida Medicaid Program ("Medicaid") was a partnership between the State of Florida and the federal government that provided health care benefits to certain low-income individuals and families in Florida.  The benefits available under Medicaid were governed by federal and state statutes and regulations.  Medicaid was administered by CMS and the State of Florida's Agency for Health Care Administration ("AHCA").   Individuals who received benefits under Medicaid were commonly referred to as Medicaid "recipients."

10.      Medicaid reimbursed DME companies and other health care providers for items and services rendered to recipients, including DME, that were medically reasonable and necessary and were in fact provided as billed.  To receive payment from Medicaid, providers submitted or caused the submission of claims to Medicaid, either directly or through a Medicaid Managed Care Organization ("MCO").

11.      Medicare beneficiaries who were dual-enrolled Medicaid recipients were referred to as "dual-eligible beneficiaries."  To receive payment for dual-eligible beneficiaries, providers submitted or caused the submission of claims to Medicare and Medicaid, either directly or through a billing company or MCO.  Medicare would reimburse the primary cost (80%) and Medicaid would cover the secondary cost (20%) for dual-eligible beneficiaries.

12.     Medicaid was funded with both federal and state money, and was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

## The Defendants, Related Companies, and Related Individual

13.     Timely Medical Services Corp. ("Timely Medical") was a Florida corporation located in Miami-Dade County that purported to be a DME provider.

14.     Ortho-Med Solution, Inc. ("Ortho-Med") was a Florida corporation located in Miami-Dade County that purported to be a DME provider.

15.     Expedited Medical Supplies Corp. ("Expedited Medical") was a Florida corporation located in Miami-Dade County that purported to be a DME provider.

16.     Jesus Garces, a resident of Miami-Dade County, was a beneficial owner of Timely Medical, Ortho-Med, and Expedited Medical.

17.     Defendant **EDUARDO PEREZ DE MORALES**, a resident of Miami-Dade County, was a beneficial owner of Timely Medical, Ortho-Med, and Expedited Medical.

18.     Defendant **ENRIQUE SAMPEIRO**, a resident of Miami-Dade County, was a beneficial owner of Timely Medical, Ortho-Med, and Expedited Medical.

### Conspiracy to Commit Health Care Fraud
### (18 U.S.C. § 1349)

From in or around March 2018, and continuing through in or around May 2019, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### EDUARDO PEREZ DE MORALES and
### ENRIQUE SAMPEIRO,

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Jesus Garces, each other, and others, known and unknown to the United States Attorney, to commit an offense against the United States, that is, to knowingly and willfully execute a scheme and artifice to defraud health care benefit programs affecting commerce,

-4-

as defined in Title 18, United States Code, Section 24(b), that is, Medicare and Medicaid, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

19.     It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare and Medicaid; (b) concealing the submission of false and fraudulent claims to Medicare and Medicaid; and (c) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

20.     **EDUARDO PEREZ DE MORALES, ENRIQUE SAMPEIRO**, and their co-conspirators acquired, and caused the acquisition of, beneficial ownership interests in the DME companies Timely Medical, Ortho-Med, and Expedited Medical.

21.     **EDUARDO PEREZ DE MORALES, ENRIQUE SAMPEIRO**, and their co-conspirators recruited and paid individuals to serve as nominee owners of Timely Medical, Ortho-Med, and Expedited Medical, in order to conceal the identities of **EDUARDO PEREZ DE MORALES, ENRIQUE SAMPEIRO**, and their co-conspirators as the beneficial owners of the DME companies.

22.     **EDUARDO PEREZ DE MORALES, ENRIQUE SAMPEIRO**, and their co-conspirators obtained the names and identification numbers of Medicare beneficiaries, and the

names and provider numbers of physicians, in order to submit false and fraudulent claims to

Medicare and Medicaid for DME that was not prescribed by a licensed physician, was not medically

necessary, and was never provided to the beneficiaries and recipients.

23.     **EDUARDO PEREZ DE MORALES, ENRIQUE SAMPEIRO,** and their co-

conspirators submitted, and caused the submission of, false and fraudulent claims totaling

approximately $18.8 million to Medicare and Medicaid on behalf of Timely Medical, Ortho-Med,

and Expedited Medical, for DME that was never provided and not eligible for reimbursement.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. § 982(a)(7))

1.      The allegations of this Information are re-alleged and by this reference fully

incorporated herein for purposes of alleging criminal forfeiture to the United States of America of

certain property in which the defendants, **EDUARDO PEREZ DE MORALES** and **ENRIQUE**

**SAMPEIRO,** have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Section 1349, as

alleged in this Information, the defendant so convicted shall forfeit to the United States of America,

pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, which

constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of

such violation.

3.      If any of the property subject to forfeiture, as a result of any act or omission of the

defendants:

      a.   cannot be located upon the exercise of due diligence;
      b.   has been transferred or sold to, or deposited with, a third party;
      c.   has been placed beyond the jurisdiction of the court;
      d.   has been substantially diminished in value; or
      e.   has been commingled with other property which cannot be divided without
         difficulty,

the United States shall be entitled to the forfeiture of substitute property under the provisions of

Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1).

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth

in Title 21, United States Code, Section 853, as incorporated by Title 18, United States Code,

Section 982(b)(1).

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALEXANDER THOR POGOZELSKI
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

EDUARDO PEREZ DE MORALES, et al.

**CERTIFICATE OF TRIAL ATTORNEY**

_____/
Defendants.

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL   ☐ WPB

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3.  Interpreter: (Yes or No) Yes _____
    List language and/or dialect: Spanish _____

4.  This case will take __0__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)                          (Check only one)
    I     ☒ 0 to 5 days                        ☐ Petty
    II    ☐ 6 to 10 days                       ☐ Minor
    III   ☐ 11 to 20 days                      ☐ Misdemeanor
    IV    ☐ 21 to 60 days                      ☒ Felony
    V     ☐ 61 days and over

6.  Has this case been previously filed in this District Court? (Yes or No) No _____
    If yes, Judge _____ Case No. _____
7.  Has a complaint been filed in this matter? (Yes or No) No _____
    If yes, Magistrate Case No. _____
8.  Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes _____
    If yes, Judge Singhal _____ Case No. 19-CR-20812 _____
9.  Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No _____
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No _____
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No _____
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No _____

By: _____
    for ALEXANDER POGOZELSKI
    DOJ Trial Attorney
    Court ID No.   A5502549

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** _____ **EDUARDO PEREZ DE MORALES** _____

**Case No:** _____

Count #:   1

__Title 18, United States Code, Section 1349_____

__Conspiracy to Commit Health Care Fraud_____

\* **Max. Term of Imprisonment:      10 years**
\* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
\* **Max. Supervised Release:    3 years**
\* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense** _____

---

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:      **ENRIQUE SAMPEIRO**

Case No: _____

Count #:   1

Title 18, United States Code, Section 1349

Conspiracy to Commit Health Care Fraud
* **Max. Term of Imprisonment:**      **10 years**
* **Mandatory Min. Term of Imprisonment (if applicable):   N/A**
* **Max. Supervised Release:      3 years**
* **Max. Fine:   $250,000 or twice the gross gain or loss from the offense**

**\*Refers only to possible term of incarceration, supervised release and fines.   It does not include
restitution, special assessments, parole terms, or forfeitures that may be applicable.**